UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN N. ESLINGER, | ) | Case No. 5:09 CV 0912 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Kevin N. Eslinger appeals the administrative denial of disability insurance benefits under 42 U.S.C. §405(g) and the denial of supplemental security under 42 U.S.C. §1383(c)(3). Eslinger maintains that he is disabled due to mental impairment combined with physical ailments which limit him to light exertion. An administrative hearing was held on Eslinger's benefit applications at which the testimony from a medical advisor, Dr. Schweid, and a vocational expert, Mr. Gene Burkhammer, was received. [1] An ALJ found on June 13, 2008, that Eslinger was not disabled because he could perform other unskilled work as housekeeping cleaner, sales attendant, and car wash attendant (Tr. 28-29). This decision became the final decision of the Commissioner following the Appeals Council's denial of review. See 20 C.F.R. §404.981, §416.1481. This matter has been referred to the undersigned for report and recommend disposition pursuant to Local Rule 72.2.

At issue is the June 13, 2008 administrative decision. Due to Eslinger's foot problems

---

[1] Also at this hearing, Eslinger amended his onset date of disability from January 1, 2001, to January 26, 2004. (Tr. 59-63, 398-99).

2

and degenerative spinal condition, the ALJ found that Eslinger was physically restricted to light work with occasional stooping and climbing of ramps or stairs.  Due to his severe mental impairments of obsessive compulsive disorder, anxiety and depressive disorder, Eslinger was found to be restricted to those situations where he would only be able to cope with simple, repetitive work with no high production quotas, or piece work (Tr. 20).  Further Eslinger would be restricted from work involving more than superficial interaction with co-workers and the public and work without negotiation or confrontation. The vocational expert identified the foregoing three occupations as falling within those parameters and testified that these jobs existed in significant numbers within the local and national economies (Tr. 19-20, 28,  428-31).

*I. Eslinger's Contentions:*

Eslinger challenges the ALJ's findings with the following three arguments:

1. The ALJ erred by not affording Plaintiff's treating physicians' opinions appropriate weight;

2. The ALJ erred by adopting a residual functional capacity that is not supported by substantial evidence, and further erred by accepting vocational expert testimony in response to a hypothetical question that is not supported by substantial evidence; and,

3.  The ALJ erred by not finding the claimant totally credible.

The undersigned finds that the ALJ's decision is contrary to the deference accorded under the treating physician rule. This conclusion is not due to the lack of inconsistent evidence,

but due to the ALJ's rejection of inconsistent evidence, either outright or through interpretation. Accordingly, remand becomes necessary to resolve whether the number of three or more absences each month is disabling because this question was never propounded to the vocational expert.


*II. Standard of Review:*

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009) (quoting *Richardson v. Perales*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 506 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986. Accordingly, the Court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270,  273(6th Cir. 1997); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").


*III.  Sequential Evaluation Process:*

4

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.  See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d).  If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work."). "At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work."  *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92

5

(6th Cir. 1999).  Eslinger had established that he could not perform his past relevant work. Consequently, the burden had shifted onto the Commissioner  to demonstrate the existence of types of employment compatible with the individual's disability. See  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d at 771; *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d at 391-92.


*IV. The ALJ's consideration of Drs. Dinsmore's, Gorbett's and Orlando's Opinions:*

*A. ALJ ignored Consistency of Opinion from Treating Physicians and Medical Advisor:*

Eslinger argues that the record contains the uncontradicted opinions of treating physicians Dr. Dinsmore and Dr. Gorbett who opined that Eslinger's anxiety, depression and obsessive compulsive disorder would cause him to be absent from work more than three times a month and he claims  that these opinions are uncontradicted (Tr. 268, 272).  Further, Eslinger relies on his treating psychologist, Dr. Orlando, who he claims stated Eslinger suffered from an adjustment disorder, mixed and anxiety and depressed mood and "[a]t times, would call off for 'mental health' days" (Tr. 229).


Dr. Gorbett indicated "poor or none" in his assessment of mental abilities to do work-related activities (Tr. 271-72).  According to this doctor, Eslinger could not understand, remember or carry out detailed instruction or deal with stress of semi-skilled or skilled work (Tr. 272). Eslinger further would be unable to use public transportation, travel to unfamiliar places, interact appropriately with the public, or maintain socially appropriate behavior (*Id*.).  Dr. Gorbett indicated that Eslinger would be absent from work more than three times a month (*Id*.).

6

The ALJ rejected Dr. Gorbett's opinion because the severity of the limitations he proposed were not supported by that doctor's treatment notes (Tr. 24).  The ALJ's finding  is supported by the record. Dr. Gorbett for example reported on May 4, 2006, no suicidal ideation, but mood remarkable for "slightly anxious."  His other findings were also tending toward normalcy with and insight remarkable for Eslinger's "understanding of CBT concepts," and additionally labeling as "unremarkable": behavior, speech, thought process, thought content, judgment, motivation and vegetative (Tr. 314-15). This doctor repeated similar findings in his other reports, but with variances as adding remarkable motivation - "appears motivated, " "tangential" thought process, and  "anxious mood over son" (See Tr. 278-315).  Eslinger bickers over indications in Dr. Gorbett's notes such as "Cl. making some progress in challenging irrational cognitions" or "Cl. agreed too [sic] challenge irrational cognition (Tr. 300, 302, 312). However, these comments in the notes together with numerous comments of "unremarkable" or indications of slight abnormalities come nowhere near supporting the dire mental residual factional capacity assessment which indicates that Eslinger could not even behave within socially acceptable tolerances (Tr. 272).

Dr. Dinsmore was slightly more optimistic in his opinion that Eslinger had for the most part "fair" as opposed to "poor or none"  abilities for  mental work-related activities (Tr. 267-68).  This doctor likewise indicated that Eslinger would be absent from work more than three times a month (Tr. 268).

The ALJ discounted Dr. Dinsmore's opinion because he is a family practitioner and

7

because his records contain no information on Eslinger's mental status except to note that he was prescribed Librium (Tr. 24). The ALJ's finding, likewise, is supported by the record.

Insofar as the reasons provided by the ALJ relative to Dr. Gorbett's and Dr. Dinsmore's opinions, the ALJ's ddetermination was supported by substantial evidence. However, the basis for the legal and factual dispute occurs in Dr. Orlando's opinion.  The  ALJ accepted Dr. Orlando's opinion (Tr. 23). The ALJ referred to Exhibit 6F , Dr. Orlando's responses to a questionnaire from Ohio's Bureau of Disability Determination (Tr. 225-30), and recounted several of Dr. Orlando's findings before concluding "Dr. Orlando's opinions are consistent with the evidence and are given full weight" (Tr. 23).

A complication arises, however, because the ALJ overlooked Dr. Orlando's response in Ex. 6F to the instruction to "Describe and give examples of anything that might prevent work activities for a usual work day or work week, e.g. high need for rests, poor attendance, lack of awareness of normal hazards, poor stress tolerance, etc." ( Tr. 229).  Dr. Orlando responded that Eslinger had low stress tolerance and would "call off" for "mental health days" (*Id.*).  This opinion establishes a point of convergence for all three treating physicians (Tr. 229, 268, 272). The opinions of the treating physicians were consistent that Eslinger could not sustain work activities due to mental impairment.

Eslinger argument is reinforced by the testimony from Dr. Schweid, the medical advisor at the administrative hearing.  Dr. Schweid  stated that "So although I think *his residual*

8

*functional capacity for short-term* would be for routine, low stress tasks, which would not include arbitration, negotiation, confrontation, being a supervisor or a manager or being responsible even for the health, safety and welfare of others and no high production quotas. *I think he could handle that over a short period of time*, but I don't see how I can discount what his treating doctors have said (emphasis supplied)." (Tr. 420).  So, all three treating physicians and the medical advisor produced opinions that Eslinger could not sustain work activity due to mental impairment, and as Dr. Orlando said, Eslinger would need "mental health days," (Tr. 229), which Dr. Dinsmore and Dr. Gorbett quantified at more than three days a month. (Tr. 268, 272).

The general rule is that reports of physicians who have treated the applicant over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2); 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the treating physician rule. See *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Rogers*, 486 F.3d at 242(quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004)); and see 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).  When the ALJ does not give the opinion from a treating physician controlling weight because it is unsupported or inconsistent with other substantial

9

evidence, then the ALJ must "give good reasons" for rejecting the opinion which include

consideration of: (1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4)

the consistency of the opinion with the record as a whole, and; (5) the specialization of the

treating source, as mandated under 20 C.F.R. § 404.1527(d)(2)(I)-(5) and §416.927(d)(2)(I)-(5).

See *Bowen v. Commissioner of Social Sec.,* 478 F.3d 742, 746-747 (6th Cir. 2007)(citing *Wilson*,

378 F.3d at 544).   Consistency and supportability are key.  Consistency is simply comparison

"with the record as a whole." 20 C.F.R. §404.1527(d)(4) &§416.927(d)(4). Under supportability

the ALJ considers the medical signs and laboratory findings and "[t]he better an explanation a

source provides for an opinion, the more weight" it is given. 20 C.F.R. §404.1527(d)(3)

&§416.927(d)(3). Supportability of the medical opinion of disability has long been a key factor

in determining how much weight to give the opinion.  It has been well-established that the ALJ

is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or

when there is substantial medical evidence to the contrary.  *Cutlip v. Secretary*, 25 F.3d 284, 286

(6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742

F.2d 968, 973 (6th Cir. 1984).  The distinction is that supportability is based on the reports of a

particular treating source, whereas consistency is based on a comparison with "the record as a

whole." The opinions from the treating physicians  consistently found that Eslinger could not

sustain work activity without absences due to his mental impairment.


*B. No Specific Quantifying of the Number of Absences was not Substantial Evidence:*

10

The Commissioner counters that Dr. Orlando gave no indication that these absences would occur with such frequency that Eslinger would be unable to maintain gainful employment. However, this counter-argument does not diminish Dr. Orlando's finding that Eslinger could not sustain work activities. The number of absences was quantified by Dr. Dinsmore and Dr. Gorbett. Dr. Orlando agreed that Eslinger would have absences due to mental health days, but the state agency had only asked Dr. Orlando to identify factors that would prevent a usual work day or work week (Tr. 229). Dr. Orlando's report stated that Eslinger was prevented from performing "work activities for a usual work day or work week" (Tr. 229).  Given that there are four work weeks in a month, Dr. Orlando's report shows a frequency consistent with the other treating physicians.  Moreover, the ALJ certainly was authorized under 20 C.F.R. §404.1527(c)(3) and §416.927(c)(3) to reinquire with Dr. Orlando about the frequency of the reported "mental health days." [2] As it stands, the record is consistent in the opinion from treating physicians that Eslinger requires mental health days and that these would occur more than three days a month.  The ALJ ignored the need for absences from Dr. Orlando's questionnaire responses and thus failed to "give good reasons." Compare  *Allen v. Commissioner of Social Sec.,* 561 F.3d 646, 651 (6th Cir. 2009)(ALJ gave good reasons to discount treating physician's questionnaire responses).  The result is both legal error and  a lack of  substantial evidence due to the disregard consistent evidence indicating disability from three treating physicians and the

---

[2]  (3) If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3) & see similarly worded §416.927(c)(3).

11

medical advisor.

*C. Treating Physicians' Opinions were "Not Inconsistent with the other Substantial Evidence in the Case Record":*

At this point, the Commissioner desperately needs to show that there was evidence in the record which refutes the overwhelming medical opinion that Eslinger would have more than three absences each month due to inability to handle stress.  The Commissioner argues there is consistency between Dr. Orlando's findings and those from Dr. Sipps' March 2005 consultative psychological examination in an attempt to harmonize those medical opinions. (See Tr. 201-06). This task is impossible.  The ALJ had accepted both Dr. Orlando's opinion and Dr. Sipps' consultative psychological findings as consistent with the record and gave both these opinions full weight. (Tr. 23, 25).  The Commissioner' brief relies on  Dr. Sipps findings with respect to the "B-criteria" from the Psychiatric Review Technique. The "four broad functional areas" of the Psychiatric Review Technique (See 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3)), otherwise known as the "B-criteria" for purposes of §12.00C, are (1) activities of daily living, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of decompensation.  The Commissioner argues that Dr. Sipps opined that Eslinger had moderate limitation in relating to the public, mild limitation in responding appropriately to co-workers and supervisors, and that his ability to concentrate was low average. (Tr. 205). There is no correlation, however, between the "B-criteria" findings and a restriction due to inability to handle stress or work pressures.

Those four functional areas of the "B-criteria" must be rated, but do not directly translate

12

into residual functional capacity ("RFC").  As SSR 96-8p states, the categories under the B-criteria and C-criteria regarding mental disorders from §12.00C of the Listing of Impairments of Appendix 1 as used  in the Psychiatric Review Technique "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."

Another series or ratings known as the  mental residual functional capacity assessment ("MRFCA") is used at steps 4 and 5 of the sequential evaluation process by state agency reviewing physicians.  The MRFCA is prepared in accordance with 20 C.F.R. §404.1545(c) and §416.945(c)'s "limitations in understanding, remembering, and carrying out instructions, in responding appropriately to supervision, coworkers and work pressures in a work setting [.]" [3] "Reports from psychiatrists and other physicians, psychologists, and other professionals working in the field of mental health should contain . . . a medical assessment describing ability to do work-related activities.  These reports may also contain other observations and opinions or conclusions on such matters as the individual's failure to cope with stress, the ability to relate to other people, and the ability to function in a group or work situation."  SSR 85-16 and see *Cheshire v. Commissioner of Soc. Sec.*, 2008 WL 681024 at *3 (N.D. Fla.).  The MRFCA provides a more detailed assessment by itemizing various functions considered under the broad

---

[3]   Even the ALJ had acknowledged:
The limitations identified in the 'paragraph B' and 'paragraph C' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR96-8p).
(Tr. 20).

13

categories found in the  B and C-criteria of the Adult Mental Disorders Listings in §12.00 of the

Listing of Impairments, and summarized on the Psychiatric Review Technique.  *Id.* at *4; SSR

96-8p.  Especially relevant to this matter is that the MRFCA rates the ability to handle work

pressures and attendance.


The Social Security Administration's MRFCA form  provides for four broad categories:

(1) understanding and memory; (2) sustained concentration and persistence; (3) social

interaction; and, (4) adaptation. The MRFCA form SSA-4734-F4-Sup requires the evaluator to

indicate ratings *inter alia* on:

> 7.  The ability to perform activities within schedule, maintain regular attendance,
> and be punctual within customary tolerances.

> 8.  The ability to sustain an ordinary routine without special supervision.

> 11. The ability to complete a normal workday and workweek without
> interruptions from psychologically based symptoms and to perform at a consistent
> pace without unreasonable number and length of rest periods.

> See POMS DI 24510.090

The evaluator is required to rate the forgoing assessment factors as "not significantly limited,"

"moderately limited," "markedly limited," "no evidence of limitation in this category" and "not

ratable on available evidence." See Program Operation Manual System (POMS) DI 24510.090. [4]

 Dr. Sipps provided no ratings in these categories and critically, no MRFCA from the non-

examining state agency physicians appears in this record (See Tr. 207-19).  Accordingly, there

---

[4]   The POMS is the operational reference used by SSA staff to conduct SSA's daily business.  "While
these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant
respect . . ." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003).  The POMS is available through
http://www.ssa.gov

was nothing in  Dr. Sipps report that contradicted Dr. Orlando and the other treating physicians'

opinions on the inability to sustain work activity.


*D. ALJ applied Legal Standard which Conflicted with the Commissioner's Position:*

The ALJ's determination has:  (1) disregarded the opinion of "no severe impairment"

from the state agency psychologists as derived from Dr. Sipps' report, despite their regulatory

designated status as experts in Social Security disability evaluation; and,  (2)  substituted his own

interpretation of Dr. Sipps' opinion on the severity of Eslinger's mental impairment based on Dr.

Sipps' Global Assessment of Functioning ("GAF") score ranking  as "moderately" impaired.


The ALJ accepted Dr. Sipps consultative conclusions as consistent with the record (Tr.

25).  State agency psychologists had reviewed  and accepted Dr. Sipps' report and prepared a

Psychiatric Review Technique derived from  Dr. Sipps report. Their conclusion was that

Eslinger had no severe mental impairment. (Tr. 25, 207-219).  The SSA's regulations provide

"[S]tate agency medical and psychological consultants and other program physicians and

psychologists are highly qualified physicians and psychologists who are also experts in Social

Security disability evaluation." 20 C.F. R. §404.1527(f)(2)(I), §416.927(f)(2)(I). Yet, the ALJ

rejected the expertly prepared disability evaluation derived from Dr. Sipps findings for the

reason that "[e]vidence submitted subsequent to the State Agency review indicates greater

limitations [.]" (Tr. 25). Despite the forgoing regulation, the ALJ gave this state agency

psychological expert opinion absolutely no deference, and the evidence submitted subsequent to

state agency review consisted of the reports from Drs. Gorbett, Dinsmore, and Orlando.

15

The ALJ further ignored administrative protocol when he found that  Dr. Sipps' report indicated "moderate limitation." (Tr. 25). The ALJ based this conclusion on Dr Sipps' GAF score  of "56" (Tr. 25, 206).   The ALJ's approach is based on the DSM-IV-TR.  According to the DSM-IV-TR, a GAF score of 51 to 60 is described as indicating: "**Moderate symptoms** (*e.g.* flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peer or co-workers.)." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, p. 34 (4th Ed. text revision).

 However, the Commissioner's official position, upheld through litigation, is that the GAF score is **not** indicative of residual functional capacity because  there is no direct correlation between GAF score's measurements and the mental disorder severity listings.  See 65 Fed. Reg. 50746-01, 5076-4, 5076-5, 2000 WL 1173632 (F. R.); *Kennedy v. Astrue,* 247 Fed.Appx. 761, 766 (6th Cir. Sep. 7, 2007);  *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006)(unpublished).  The Commissioner's position is that the GAF score "represents 'the clinician's judgment of the individual's overall level of functioning,'" not necessarily the severity of impairment.  *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 415, 2006 WL 3690637 (6th Cir. Dec. 15, 2006); *Wesley v. Comm'r of Soc. Sec.*,  2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000) (quoting Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed.1994)).  Heeding this legal position, the Sixth Circuit found that an even lower  GAF score in the 41to 50 range (indicating **"Serious symptoms"** in the DSM-IV-TR),  "does not establish an impairment seriously interfering with the plaintiff's ability to perform basic work activities."

*Kornecky v. Comm'r of Social Security,*  167 Fed.Appx. 496, 511, 2006 WL 305648, 110 Soc. Sec. Rep. Serv. 315 (6th Cir.  Feb. 9, 2006)(unpublished) (quoting *Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)). By the same rationale, the Commissioner's position has been that an ALJ's failure to refer to a GAF score in formulating residual functional capacity does not make the ALJ's formulation unreliable. See  *Kornecky*, 167 Fed. Appx. at 511 (citing *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir. 2003)).

The ALJ's finding that  Dr. Sipps' report indicates "moderate" severity under DSM-IV-TR categories is favorable to Eslinger since "moderate" equates with moderate difficulty with occupational functioning, occasional panic attacks and conflicts with peers or co-workers. See DSM-IV-TR. p. 34.  Without question, the ALJ's conclusions to reject the Psychiatric Review Technique's finding that there was no severe mental impairment combined with the incorporation of the GAF score assigned by Dr. Sipps' as indicating "moderate limitation" effectively  nullifies Dr. Sipps' report as inconsistent with the opinions from the three treating physicians and the medical advisor.

*E. Eslinger has Established his First Claim:*

As it stands, the ALJ's decision is based on acceptance of Dr. Sipps' and Dr. Orlando's opinions, but it is obvious that the ALJ failed to recognize  part of  Dr. Orlando's opinion regarding Eslinger's need for mental health days. (Tr. 23, 229). The Commissioner's argument that these divergent opinions can be reconciled, instead, reveals that the ALJ proceeded with an interpretation of Dr. Sipps' report that was contrary to the litigation position taken by the

17

Commissioner in other cases.  The Court is left with the Commissioner's argument to affirm the ALJ's determination because "Dr. Orlando . . .  gave no indication that these absences would occur with such frequency that Plaintiff would be unable to maintain gainful employment." (Brief at 8, ECF # 16).

It is abundantly clear that the ALJ's decision was not supported by substantial evidence due to his failure to consider the consistent findings from Drs. Gorbett, Dinsmore, Orlando and Schweid that Eslinger could not sustain work activity due to his mental impairments. Granted, Dr. Orlando did not quantify the frequency of these absences, but there was nothing in his opinion to detract from Dr. Gorbett's and Dr. Dinsmore's opinion of absences of more than three times a month (Tr. 268, 272), and Dr. Orlando's report can be read as also indicating 4 absences monthly.  The Commissioner offers no resolution other than for the Court to affirm the ALJ's determination as supported by substantial evidence, which it clearly is not.

The undersigned conjectures that had the ALJ more carefully read Dr. Orlando's opinion, the ALJ would not have given it "full weight," but this alone would not have resolved the question of its consistency of Dr. Orlando's opinion with the reports from the other treating physicians and the record as a whole.  The ALJ's decision was clearly erroneous and not supported by substantial evidence because the decision discounted evidence contradictory to the opinions concerning sustainability of work activity, yet ignored the well-established rule that "medical opinions and diagnoses of treating physicians are entitled to great weight, and if uncontradicted, are entitled to complete deference" *Germany-Johnson v. Comm'r of Soc. Sec.,*

18

313 Fed.Appx. 771, 776-777, 2008 WL 4791383, at * 5 (6th Cir. Nov. 5, 2008)(citing *Cohen v. Sec'y Health and Human Serv.*, 964 F.2d 524, 528 (6th Cir.1992);  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984)); and see  *Rogers*, 486 F.3d at 242.  Complete deference should have been accorded the treating physicians' opinions concerning lack of work sustainability.


*V. Vocational Expert's Testimony:*

*A. Absences from Work:*

However, the vocational restriction to more than three absences each month is not necessarily disabling.  Eslinger contends that the hypothetical question propounded by the ALJ to the vocational expert was incomplete because it omitted the requirements of a need to change position throughout the work day due to back and foot pain and the restriction due to absences of more than three days a month. The lack of contradiction of medical opinion on Eslinger's inability to sustain work activity has been analyzed previously.


The ALJ asked Mr. Burkhammer, the vocational expert at the administrative hearing to consider an individual limited to light work with no climbing of ladders, ropes or scaffolds (Tr. 428). In this hypothetical question this individual would further be restricted to occasional stooping, no work at unprotected heights, and limited to simple, routine work without high production quotas and without more than superficial interaction with coworkers and the public and without  negotiation or confrontation  (*Id.*). The vocational expert identified three jobs: housekeeping cleaner ; sales attendant; and,  charge account clerk (Tr. 428-29).  When cross-examined the vocational expert conceded that the job of charge account clerk as described in the

19

Labor Department's *Dictionary of Occupational Titles* would require more than superficial contact with the public, so this job was excluded  and car wash attendant was substituted (Tr. 431).

Eslinger intended to ask the ALJ to add an additional limitation for "missing three or more days of work a month." (Tr. 431).  The question was discussed with the ALJ, but never propounded to the vocational expert. (Tr. 431-32). Instead on re-examination of the vocational expert was asked only to consider a sit/stand option. (Tr. 432).  Eslinger assumes that the vocational expert responded, but this is not evident in the record. Further, the ALJ did not address whether this number of absences would impose a significant vocational factor. See *Abbott v. Sullivan*, 905 F.2d at 926-8(ALJ may support finding that nonexertional limitation does not have a significant effect on the outcome of the "grids" of Appendix 2 with expert vocational testimony or other similar evidence.).  The record is inadequate for the court to resolve the issue whether a restriction to three or more absences monthly is disabling.

*B. Sit/stand Option:*

Dr. Schweid testified that Eslinger could perform light work, but would need to change positions periodically when standing or seated (Tr. 419). Eslinger asked the vocational expert to consider the same restrictions from the ALJ's hypothetical question but add the need for a sit/stand option (Tr. 431).[5]  The vocational expert stated that this additional factor eliminated the

---

[5]  As explained in *Wages v. Secretary of Health and Human Services,* 755 F.2d 495, 498 (6th Cir.1985):

In some disability claims, the medical facts lead to an assessment of [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person

first three jobs he had  identified, and eliminated the substituted job of car was attendant (Tr. 431-32).

A vocational expert's opinion cannot constitute substantial evidence unless the expert <u>precisely</u> considers the particular physical and mental impairments affecting claimant.  *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *McMillan v. Schweiker*, 697 F.2d 215, 221 (8th Cir. 1983).  *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002).  However, the ALJ is not required to propound a hypothetical question accepting all claimant's allegations as credible.  *Varley*, 820 F.2d at 780.  Rather, the hypothetical question must be based upon factual assumptions supported by substantial evidence from the record.  *Id.*  "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Secretary of Health and Human Services,*  987 F.2d 1230, 1235 (6th Cir.1993).

Eslinger had in fact in a written self-report state "I feel tired when standing and I can't sit down for to (*sic*) long due to anxiety/restlessness" (Tr. 163).  He did not in that instance claim

_____

must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

that sitting was painful. The ALJ rejected a sit/stand option explaining that there was no objective evidence to support this limitation, and  Eslinger had complained he became "restless" with sitting, but did not complain of pain (Tr. 27, 163).

The validity of the first reason advanced by the ALJ for rejecting a sit/stand option is questionable.  There was evidence of spinal degenerative changes (See Tr. 331, 342). [6] However, Eslinger's success on this argument is thwarted by two critical  omissions.  First,  Dr. Dinsmore, who as the ALJ noted was Eslinger's family practitioner,  provided a methodical mental residual functional capacity assessment, but totally omitted any findings on Eslinger's physical capacity. Second, and devastating to the success of this argument, is Eslinger's own written statement where he omits that his problem with sitting was due to pain.  Consequently, there was substantial evidence for the ALJ to accept the vocational expert's testimony omitting the need for a sit/stand option.

*VI. ALJ's Credibility Assessment was Application of Correct Legal Standard and Supported:*

Eslinger is incensed over the ALJ's reliance on what the ALJ termed as drug-seeking behavior as a reason to only partially credit Eslinger's complaints of pain.(Tr. 25-26). Eslinger also faults the ALJ for finding exaggeration, inconsistencies in statements, and  paucity of treatment (*Id*.).  Eslinger contends that the ALJ erred in finding that Eslinger was not totally credible. This oft-repeated argument in Social Security appeals, though,  invites the rhetorical

---

[6] X-rays revealed end plate sclerosis with spur formation in the lumbar spine with disc space narrowing at L1-2, L2-3, and L5-S1 (Tr. 342).

22

question - is anyone totally credible?  However, returning to more germane issues, the  role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence, but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act.  See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The ALJ's discussion of this issue must contain clearly stated reasons. See *Felisky v. Bowen*, 35 F.3d at 1036 (citing *Auer v. Secretary  of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)).  It is critical that the ALJ provide reasons which are "sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Rul. 96-7p, 1996 WL 374186 *1-2.

Eslinger's argument acknowledges that the ALJ did provide clear reasons for the credibility determination. Therefore, the question distills to whether the reasons advanced by the ALJ were supported by substantial evidence. Eslinger argues: first, that the medical advisor agreed that the medical evidence supported a sit/stand option and inability to sustain work activity; second, that  "although Plaintiff testified that he enjoyed music and poetry (hardly work activity) there is no evidence that he was currently doing those things at the time of the hearing. Dr. Sipps report only states that those are Plaintiff's hobbies, not that he currently did them. (See Tr. 204);" third, there is no evidence of failing to follow prescribed treatment; and fourth, asking for Oxycontin on two occasions does not support drug-seeking behavior.

First, the matter of the sit/stand option has been analyzed previously, and the ALJ's

23

decision not to include it in the residual functional capacity is supported by substantial evidence. Second, Eslinger had listed his hobbies on his activity report as playing guitar, writing poetry and reading. (Tr. 130). On March 29, 2005, he told Dr. Sipps that he did many of these same activities (Tr. 204). Later, he conveyed to Dr. Orlando that he engaged in these activities (Tr. 230). The ALJ's reading of Dr. Sipps report that Eslinger had hobbies at the time was a natural and reasonable interpretation of that report, as was the conclusion that Eslinger remained capable of such activities at the time of the hearing. Thus, there was substantial evidence to support the finding that there were inconsistences in Eslinger's statements then and at the hearing. (Tr. 26). Likewise, requesting a particular drug is in simplest terms, drug-seeking behavior.  Eslinger is displeased with the connotation this gives, but the finding is supported by substantial evidence.

However, Eslinger's third argument establishes that in this one instance, the ALJ lacked substantial evidence.  The medical advisor, Dr. Schweid, did testify that Eslinger was not getting all the treatment he needed (Tr. 424).  However, the implicit conclusion in the ALJ's decision that Eslinger is avoiding treatment, is an unreasonable extension.  Overall, the ALJ applied the correct legal standard and save one instance, the ALJ's credibility findings were based on substantial evidence. That being said, this does not in any way negate the analysis under Section IV of this report and the conclusion that the ALJ's decision violated the treating physician rule.

**VII. Conclusion and Recommendation:**

The ALJ's determination to omit a sit/stand option from Eslinger's residual functional capacity was supported by substantial evidence, as was the determination to give Eslinger's

24

testimony only partial credence. However, as explained under Section IV of this report, the ALJ was not supported by substantial evidence when he disregarded the consistent and uncontradicted medical opinions that Eslinger could not sustain work activity and this would result in absences of more than three days a month.  But further, as explained in Section V of this report, there was no vocational expert testimony whether this limitation would be disabling.


Congress has authorized reversal  under the fourth sentence of 42 U.S.C. §405(g) "with or without remanding the cause for a rehearing."  See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994)(citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989)). The Commissioner's decision may be reversed and benefits awarded without remand for rehearing only when the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. See *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176; *Mowery v. Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).  However, in all other circumstances, when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under the fourth sentence for rehearing. See  *Faucher*, 17 F.3d at 175-76. This includes those circumstances where all essential factual issues have not been resolved or when the record is inadequate. See  *Faucher v. Secretary of Health and Human Services*, 17 F.3d at 176; *Mowery*, 771 F.2d at 973.

25

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned recommends that the Court find that the  Commissioner's decision denying disability insurance benefits and  supplemental security income is not supported by substantial evidence and that this decision be reversed and remanded under the Fourth sentence of 42 U.S.C. §405(g) for consideration of the vocational effect of plaintiff's restriction to jobs allowing for absences of more than three days each month.

s/James S. Gallas
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).